IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ANGUS KELLEY,
        Petitioner,

vs.                                                Case No.:  5:14cv68/RS/EMT

MICHAEL D. CREWS,
        Respondent.
_____/

### REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 12).  Petitioner filed a reply (doc. 19).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 12).[1]  Petitioner was charged in the Circuit Court in and for Calhoun County, Florida, Case No. 2007-CF-32, with one count of robbery with a deadly weapon (Count I), one count

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 12).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

of obstructing an officer without violence (Count II), and one count of battery on a police dog (Count III) (Ex. C at 7, 21–22).  The State subsequently dropped the battery on a police dog charge (*id.* at 42).  A jury found Petitioner guilty as charged, and made an additional finding that he wore a mask during the armed robbery (Ex. C at 61, 62, Ex. D).  The trial court adjudicated Petitioner guilty and sentenced him as a prison releasee reoffender to a mandatory term of thirty years of imprisonment on Count I, with 226 days of pre-sentence jail credit, and time served on Count II (Ex. C at 101–07, Ex. E).  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-5340 (Exs. B, J).  The First DCA affirmed per curiam without written opinion on September 15, 2009, and the mandate issued October 1, 2009 (Exs. L, M).  Kelley v. State, 17 So. 3d 293 (Fla. 1st DCA 2009) (Table).

On October 6, 2009, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D09-5163, alleging ineffective assistance of appellate counsel (Exs. N, O).  The First DCA denied the petition on the merits on October 30, 2009 (Ex. P).  Kelley v. State, 23 So. 3d 735 (Fla. 1st DCA 2009) (Mem).

On December 29, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. V at 1–43).  The state circuit court summarily denied eight of Petitioner's claims, set a limited evidentiary hearing on his remaining claims, and appointed post-conviction counsel (*id.* at 318–24, 469, 483).  Following the evidentiary hearing (Ex. AA), the court denied the Rule 3.850 motion (*id.* at 498–500).  Petitioner appealed the decision to the First DCA, Case No. 1D12-2679 (Exs. U, BB).  The First DCA affirmed the decision on February 8, 2013, with the mandate issuing April 19, 2013 (Exs. EE, HH).  Kelley v. State, 109 So. 3d 811 (Fla. 1st DCA 2013).  Petitioner sought review in the Supreme Court of Florida, Case No. SC13-903 (Exs. II, JJ).  On July 12, 2013, the state supreme court declined to accept jurisdiction and denied the petition for review (Ex. LL).  Kelley v. State, 119 So. 3d 443 (Fla. 2013) (Table).

Petitioner filed the instant federal habeas action on March 4, 2014 (doc. 1).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As

the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291–92.  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011); *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III.     PETITIONER'S CLAIM

Ground One: "Trial counsel was ineffective for failing to challenge biased jurors during voir dire in violation of Petitioner's rights to effective assistance of counsel, due process, and a

fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution."

Petitioner alleges defense counsel was ineffective for allowing Jurors Sewell and Fowler to serve on the jury despite their statements during voir dire that they would be biased in favor of testimony by law enforcement officers they personally knew (doc. 1 at 6–14).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of his claim was an unreasonable application of clearly established Supreme Court precedent, or based upon an unreasonable determination of fact (doc. 12).  Therefore, he is not entitled to federal habeas relief.

>        1.        Clearly Established Federal Law

To succeed on an ineffective assistance claim, a petitioner must show that his Sixth Amendment right to counsel was violated because (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.*, 466 U.S. at 697.

Under Strickland, trial counsel's performance is deficient only if it falls below an objective standard of reasonableness.  Strickland, 466 U.S. at 687–88.  Stated differently, counsel's error at trial "must be so egregious that no reasonably competent attorney would have acted similarly."  Harvey v. Warden, 629 F.3d 1228, 1239 (11th Cir. 2011).  The federal habeas court evaluates juror selection claims as it would any other Strickland claim, and the court's evaluation "start[s] with the strong presumption that trial counsel's performance was constitutionally adequate."  *Id.* at 1238, 1243.  Moreover, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of counsel's competency."  Williams v. Allen, 598 F.3d 778, 794 (11th Cir. 2010) (quotation mark omitted).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not,

or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

        2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 1 in his Rule 3.850 motion (Ex. V at 3–8). The state circuit court adjudicated the claim as follows:

> In Ground 1, the Defendant alleges that counsel was ineffective for failing to strike three jurors, who he claims were biased and had personal ties with testifying law enforcement officers. But, a review of the attached transcript demonstrates that the jurors were not biased, and reflects that that [sic] the jurors stated they could be fair and impartial. (*See* attached Jury Selection Transcript at pp. 15–16, 19–20, 33–35). Although Juror Fowler and Juror Sewell did indicate that they might give the officers the benefit of the doubt in telling the truth because they knew them (*Id.* at 34–35), a review of the juror's comments shows no bias patent from the face of the record, and reflects that the Defendant has not demonstrated prejudice in counsel's failure to strike these jurors. *See* Jenkins v. State, 824 So. 2d 977, 982 (Fla. 4th DCA 2002). Furthermore, the Court asked the Defendant personally whether he agreed with the jury, and he said he did. (*See* attached Jury Selection Transcript, at pp. 44). Therefore, Defendant cannot now complain about the jury. *See Solorzano v. State*, 25 So. 3d 19 (Fla. 2d DCA 2009) (citing *Muhammad v. State*, 782 So. 2d 343, 353 (Fla. 2001)).

(Ex. V at 318).

Petitioner appealed the decision to the First DCA. The First DCA adjudicated the claim as follows:

In claim 1, Appellant alleged that his trial counsel was ineffective for not striking jurors Fowler and Sewell for cause.  As he did below, Appellant contends on appeal that competent counsel would have struck those jurors as biased because they indicated during jury selection that they would give more weight to the testimony of law enforcement officers whom they knew than to the testimony of strangers.  The State responds that the performance of Appellant's trial counsel was not deficient because the transcript of jury selection shows that jurors Fowler and Sewell were not actually biased, and even if counsel's performance was deficient, Appellant is precluded from raising this postconviction claim because he affirmatively accepted the jury.

The jury selection transcript reflects that jurors Fowler and Sewell knew several of the law enforcement officers who were expected to testify at trial.  In response to the prosecutor's questions, jurors Fowler and Sewell each stated that they could be fair and impartial in weighing these witnesses' testimony.  Later, however, in response to defense counsel's questions, Fowler testified that she would probably give these witnesses the benefit of the doubt more so than a typical witness because she knew them.  Likewise, Sewell acknowledged in response to defense counsel's questions, that she would be more apt to believe the officer witnesses over someone whom she did not know.  The prosecutor did not undertake any further examination of jurors Fowler and Sewell after their responses to these questions.

Appellant's trial counsel struck four other prospective jurors for cause who, like jurors Fowler and Sewell, testified that they would give the benefit of the doubt to the law enforcement officer witnesses whom they knew.  Counsel did not move to strike jurors Fowler and Sewell for cause, nor did he use a peremptory strike on these jurors.[FN 2]  As a result, jurors Fowler and Sewell served on the jury that convicted Appellant.

> [FN 2:  Because no evidentiary hearing was held on claim 1, we do not know why counsel did not strike jurors Fowler and Sewell.  We note, however, that during the evidentiary hearing on Appellant's other claims, counsel testified that Appellant was an active participant in jury selection, discussing which jurors should serve and which should be stricken.]

A rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court, and the court may summarily deny post-conviction claims that are refuted by such representations.  *See Stano v. State*, 520 So. 2d 278, 279 (Fla. 1988).  Although this rule is most frequently applied in the context of sworn representations made by the defendant during a plea colloquy, it has also been applied to unsworn representations made by the defendant during the course of the trial.  *See, e.g., McIndoo v. State*, 98 So. 3d 640, 641 (Fla. 4th DCA 2012) (holding

that a defendant's statement at trial that he was satisfied with his attorney and that he freely and independently determined not to call any witnesses refuted his claim that his trial counsel was ineffective for failing to call a known witness).

Here, the record reflects that after the jurors had been selected, the trial court asked Appellant whether he agreed with the jury, and Appellant responded that he did.[FN 3]   Appellant cannot use the postconviction process to go behind this representation.  Accordingly, the summary denial of claim 1 was appropriate.

> [FN 3:   The transcript of jury selection includes the following colloquy:
>
> > THE COURT:  Mr. Kelley, the jury that you have selected is Mr. Drummond, Ms. Peacock, Mr. Ballard, on the front row.  Ms. Fowler and Ms. Sewell on the second row.  Ms. Wallace on the back row, and Mr. Utley is the alternate.  Do you agree with that jury, Mr. Kelley?
> >
> > ANGUS NICKLETON KELLEY: Yes, sir.]

The Second District considered a similar situation in *Solorzano v. State*, 25 So. 3d 19 (Fla. 2d DCA 2009).  There, the defendant claimed that his trial counsel was ineffective for not questioning a prospective juror at all during jury selection. *Id.* at 23.  The trial court summarily denied the claim, finding that the defendant failed to establish how the juror was incompetent to serve or inherently biased against him.  *Id.*  The Second District reversed the summary denial because the claim was not refuted by the record.  *Id.* at 24.  The court noted, however, that the defendant's claim might be refuted by the record "if the defendant personally and affirmatively accepted the jury prior to its being sworn, thus affirmatively representing to the court that the jury composition and selection process were acceptable." *Id.* (citing *Muhammad v. State*, 782 So. 2d 343, 353 (Fla. 2001)).  This is precisely what occurred below.

Appellant argues that *Solorzano* is distinguishable because the alleged deficiency in that case was counsel's failure to meaningfully examine a prospective juror rather than, as here, allowing a juror who expressed a bias to sit.  This distinction, however, provides further support for affirmance here because if the defendant's acceptance of the jury in *Solorzano* despite not knowing what the prospective juror might have said had he been examined refutes a claim that counsel was ineffective, it logically follows that Appellant's acceptance of the jury despite hearing the testimony of jurors Fowler and Sewell regarding their potential biases

serves as a bar to any claim that counsel was ineffective for allowing those jurors to serve.

The Florida Supreme Court held in *Carratelli v. State*, 961 So. 2d at 317–18, 325 (Fla. 2007), that the standard to obtain relief on a postconviction claim such as that raised by Appellant is more stringent than the standard that applies when such a claim is raised on direct appeal.  Thus, it follows that a defendant who, like Appellant, personally affirms his acceptance of the jury panel will not be heard to complain in a postconviction motion that his counsel was ineffective for allowing a biased juror to serve on his jury.  Otherwise, the defendant would have a "trump card" to use in postconviction proceedings that is not available on direct appeal.  *See generally Joiner v. State*, 618 So. 2d 174, 176 n.2 (Fla. 1993) (observing that, absent the requirement that alleged errors during jury selection must be renewed prior to the jury being sworn, the defendant "could proceed to trial before a jury he unqualifiedly accepted, knowing that in the event of an unfavorable verdict, he would hold a trump card entitling him to a new trial.")

In sum, Appellant was fully aware of the alleged bias of jurors Fowler and Sewell when he informed the trial court that he agreed with the jury selected by his trial counsel.  Accordingly, even if his counsel was ineffective for not attempting to strike the jurors for cause, Appellant cannot go behind his representation to the trial court that he was satisfied with the jury by alleging that his counsel was ineffective in jury selection.  For these reasons, we affirm the trial court's denial of claim 1 in Appellant's motion for postconviction relief.

Kelley v. State, 109 So. 3d 811, 812–14 (Fla. 1st DCA 2013) (copy at Ex. EE).

A review of jury selection principles under federal and Florida law is helpful to the court's analysis of Petitioner's claim.  A criminal defendant has a right to an impartial jury, and a prospective juror who lacks impartiality must be excused for cause.  *See* Ross v. Oklahoma, 487 U.S. 81, 85–86, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988).  To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited <u>actual</u> bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed."  United States v. Chandler, 996 F.2d 1073, 1102 (11th Cir. 1993) (emphasis added); *see also* Smith v. Phillips, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).  The burden is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality.  Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961).  Moreover, the Supreme Court has upheld a trial court's seating of a juror even where the juror gave

conflicting or ambiguous answers during voir dire about his ability to be impartial.  *See, e.g.*, Patton v. Yount, 467 U.S. 1025, 1037 n.12, 1038–40, 104 S. Ct. 2885, 81 L. Ed. 2d 847 (1984) (the constitutional standard for juror impartiality is whether the juror can lay aside his opinion and render a verdict based on the evidence presented in court); Murphy v. Florida, 421 U.S. 794, 801–03, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975).

Under Florida law, the test at trial "for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984). The trial court must grant a party's motion to strike a prospective juror for cause if there is "any reasonable doubt" as to the juror's impartiality.  Singer v. State, 109 So. 2d 7, 23 (Fla. 1959).

In the post-conviction context, however, Florida has an actual bias requirement.  *See* Carratelli v. State, 961 So. 2d 312, 323 (Fla. 2007).  "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased." *Id.* at 324 (emphasis added).  To meet the actual bias standard, "the defendant must demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record." *Id.*

Considering the record as a whole, the undersigned cannot say that the state court's determination that Petitioner's trial counsel was not ineffective was contrary to, or an unreasonable application of, Strickland, or that the state court's decision was based on an unreasonable determination of the facts in light of the record.

The transcript of voir dire shows that the following colloquy occurred with jurors Vicki Fowler and Judy Sewell:

> MR. WILSON [the prosecutor]:  On the second row, anybody else raise their hand? Mr. [sic] Fowler, who do you know?
>
> VICKI FOWLER:  I know Rodney [Smith], I know Michael Bryant, and I know Chris Porter [all of whom were witnesses for the State].

MR. WILSON:   Say all three of them were witnesses in this case and they testify, could you weight [sic] their testimony as fair as you would any other witness and be fair and impartial?

VICKI FOWLER:  Yes.

MR. WILSON:  Ms. Sewell, did you raise your hand?

JUDY SEWELL:  I know Rodney.

MR. WILSON:  Same question to you, could you be fair and impartial as a juror in a case where he's a witness?

JUDY SEWELL:  Yes.

MR. WILSON:  You wouldn't have any problems confronting him later?

JUDY SEWELL:  No.
. . . .
MR. SOMBATHY [defense counsel]:   Anybody else on the second row?   Yes, ma'am?

VICKI FOWLER:  I know Rodney and Chris and Michael Bryant.

MR. SOMBATHY:  Same question, would you give them the benefit of the doubt in telling the truth?

VICKI FOWLER:  Yes.

MR. SOMBATHY:  Probably would.

VICKI FOWLER:  Yes.

MR. SOMBATHY:  More so than a typical witness off the street because you know them?

VICKI FOWLER: Yes.

MR. SOMBATHY:  Yes, ma'am?

JUDY SEWELL:  I know Rodney [Smith], went to school with him.

MR. SOMBATHY:  If Rodney gets up there and testifies, you pretty much assume he's telling the true [sic], as compared to some person you don't know, or how well do you know him?

JUDY SEWELL:  Pretty good.

MR. SOMBATHY:  Would you be more apt to believe him over someone you don't know?

JUDY SEWELL:  I have always trust him so.

MR. SOMBATHY:  That's fair.

(Ex. I at 19–20, 34–5).

The exchange between counsel and Jurors Sewell and Fowler during voir dire about their tendency to believe the testimony of witnesses they knew more than the testimony of witness they did not know, was ambiguous and did not show actual bias.  To be sure, at one point during voir dire, Sewell and Fowler indicated that they would tend to believe the testimony of the witnesses they knew more than the testimony of witnesses they did not know; however, at another point, both jurors stated they could be fair and impartial, and weigh the testimony of witnesses they knew as fairly as the testimony of any other witness.

Further, Petitioner has not alleged the existence of any evidence, other than the cold transcript of voir dire, to show that Juror Sewell or Juror Fowler was actually biased against him. Petitioner contends that other jurors who gave the same or similar answers to the impartiality questions were stricken for cause based upon those answers, which demonstrates that Jurors Sewell and Fowler were actually biased.  However, the trial court's striking for cause other prospective jurors who gave the same or similar answers does not equate to a determination that those stricken jurors were actually biased.  As previously discussed, in Florida, a juror must be excused for cause if any "reasonable doubt" exists as to whether the juror possesses an impartial state of mind.  *See* Bryant v. State, 656 So. 2d 426, 428 (Fla. 1995).  The trial court's finding that a "reasonable doubt" existed as to the impartiality of the stricken jurors is not a finding that they were actually biased. Therefore, the trial court's striking for cause other jurors, who answered the partiality questions the

same as or similarly to Jurors Sewell and Fowler does not show that Jurors Sewell and Fowler were actually biased.[3]

Additionally, the Supreme Court has explained, the question of whether a prospective juror is biased is "largely one of demeanor," and a prospective juror's demeanor during voir dire may make clear what seems ambiguous on the face of a cold transcript:

> Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying.  Any complicated voir dire calls upon lay persons to think and express themselves in unfamiliar terms, as a reading of any transcript of such a proceeding will reveal.  Demeanor, inflection, the flow of the questions and answers can make confused and conflicting utterances comprehensible.

Patton, 467 U.S. at 1038 & n.14; *see also* Depree v. Thomas, 946 F.2d 784, 790 n.12 (11th Cir. 1991) (evaluation of bias involves assessing a juror's credibility and, therefore, his or her demeanor).  Petitioner, who was a participant in the jury selection process and was specifically asked by the trial judge whether he approved of the jury, expressed no concern about Ms. Sewell's or Ms. Fowler's impartiality.  Indeed, neither the trial judge, defense counsel, nor Petitioner, each of whom was in the best position to evaluate Ms. Sewell's and Ms. Fowler's responses and observe their demeanor, appear to have understood them to mean that they could not be impartial.

Moreover, immediately prior to deliberations, the trial court instructed the jury as follows:

> It is to the evidence introduced in this trial and to it alone that you are to look for that proof.  A reasonable doubt as to the guilt of the defendant may arise from the evidence, conflict in the evidence, or the lack of evidence.  If you have a reasonable doubt, you should find the defendant not guilty.  If you have no reasonable doubt, you should find the defendant guilty.

---

[3] The voir dire transcript shows that there were other factors suggesting partiality on the part of the jurors who were stricken for cause.  Two of the jurors who gave answers similar to those of Ms. Sewell and Ms. Fowler on the partiality question, and were stricken for cause, were employed in law enforcement—Mr. Brock stated he was a correctional officer, and Mr. Johnson stated he worked for the Department of Corrections (Ex. I at 5, 9).  Mr. Ayers, another juror who gave similar answers and was stricken for cause, was a family member of two of the law enforcement witnesses (his niece was married to Chris Porter and he was a distant cousin of Randy McCroan) (*id.* at 32).  Ms. Bess, another juror who gave similar answers and was stricken for cause, was a cousin of two people whom the prosecutor was currently prosecuting, and the prosecutor struck her for cause (*id.* at 23, 43).  As for Ms. Devuyst, she gave an equivocal answer of "I hope so, I'd try" the first time she was asked whether she could be impartial when weighing the testimony of the law enforcement witnesses she knew against the testimony of those she did not know (*id.* at 18); whereas Jurors Sewell and Fowler unequivocally stated they could be impartial at one point during voir dire (*id.* at 19–20).

It is up to you to decide which evidence is reliable.  You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in considering your verdict.  You may find some of the evidence not reliable or less reliable than other evidence.

You should consider how the witnesses acted, as well as what they said. Some things you should consider are, did the witness seem to have an opportunity to see and know the things about which the witness testified? Did the witness seem to have an accurate memory?  Was the witness honest and straightforward in answering the attorneys' questions? Did the witness have some interest in how the case should be decided? Does the witnesses' testimony agree with other testimony and other evidence in the case? Did the witness at some other time make a statement that is inconsistent with the testimony he or she gave in court?

You may rely upon your own conclusion about the witness.  A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness. . . . .

This case must be decided only upon the evidence that you have heard from the testimony of the witnesses and have seen in the form of the exhibits in evidence, and these instructions.
. . . .

Your verdict should not be influenced by feelings of prejudice, bias, or sympathy.  Your verdict must be based on the evidence and on the law contained in these instructions.

(Ex. D at 162–65).  In addition, Ms. Sewell and Ms. Fowler, along with the other empaneled jurors, took an oath to be fair and impartial (Ex. D at 10).  Jurors are presumed to follow the law as instructed by the trial court and to comply with their oaths.  Hallford v. Culliver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005).  Without any evidence that Juror Sewell or Juror Fowler was actually biased, the court must presume that each of them followed the trial judge's instructions, set aside any feelings of bias, and was fair and impartial during deliberations.

In sum, Petitioner has not shown that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to or an unreasonable application of Strickland, or that the decision was based on an unreasonable determination of the facts.  Therefore, he is not entitled to federal habeas relief.  See, e.g., Fennell v. Sec'y, Fla. Dep't of Corr., No. 13-10254, 2014 WL 4670149, — F. App'x — (11th Cir. Sept. 22, 2014) (unpublished) (denying habeas relief on claim

of ineffective assistance of counsel based upon counsel's failure to strike juror for cause); Hudson v. McDonough, No. 4:05cv215/MMP/EMT, 2007 WL 1308676, at *1 (N.D. Fla. May 2, 2007) (unpublished) (denying habeas relief on claim of ineffective assistance of counsel based upon counsel's failure to strike juror for cause, where petitioner failed to present any evidence of actual bias beyond his allegations).[4]

## IV.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 31st day of October 2014.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[4] The undersigned cites unpublished Eleventh Circuit cases and unpublished cases from this district court only as persuasive authority and recognizes that the opinions are not binding precedent.  See 11th Cir. R. 36-2.

## NOTICE TO THE PARTIES

      **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**